UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:09-cr-124-WTL-KPF-1 |
| ) | |
| STEVEN L. HUNTER, ) | |
| ) | |
| Defendant. ) | |

ENTRY ON PRETRIAL MOTIONS

This cause is before the Court on Defendant Steven Hunter's Motion to Suppress (Docket No. 30), Hunter's Motions to Dismiss (Docket Nos. 36 & 51), and the Government's Motion in Limine (Docket No. 55). The Court held an evidentiary hearing on the Motion to Suppress on November 24, 2009. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings and conclusions. For the reasons explained herein, Hunter's Motion to Suppress is **GRANTED IN PART AND DENIED IN PART**, Hunter's Motions to Dismiss are **DENIED**, and the Government's Motion in Limine is **GRANTED IN PART**, **DENIED IN PART**, and **TAKEN UNDER ADVISEMENT**.

I.  BACKGROUND

In 1984, Hunter was convicted of five counts of robbery and one count of criminal confinement. Hunter was sentenced to 120 years imprisonment and was released from prison in April 2007.

Around 1 a.m., on April 8, 2009, the Indianapolis Metropolitan Police Department ("IMPD") received a report of a domestic disturbance with shots fired at the victim. The alleged

perpetrator had fled the scene in a Grey 1998 Cadillac with handicapped license plates. IMPD officers were dispatched to a residence on East 42nd Street in Indianapolis where the victim, Barbra Shelton, stated that her fiancé, Hunter, got upset when she asked for money to pay bills. Hunter allegedly began hitting Shelton with his fists and yelling at her. He then picked up a .38 caliber revolver from a night stand and hit Shelton with the gun.[1] When Hunter left the room, Shelton picked up the telephone to call for help. Unfortunately, Hunter returned to the bedroom, saw Shelton with the phone, and resumed hitting her with the gun. When Shelton placed her head in her hands Hunter fired two shots, which hit the bed.

An officer responding to the dispatch observed Hunter's vehicle driving on Pendleton Pike. When the officer attempted to initiate a traffic stop, Hunter cut through a parking lot, turned onto Elizabeth Street, and was stopped by other officers. While Hunter was frisked and questioned, an IMPD officer returned to the parking lot and recovered a black .38 caliber Smith & Wesson revolver. Shelton subsequently identified that revolver as the one that Hunter fired into the bed. The gun contained four live rounds and two spent shell casings. When Hunter was more thoroughly searched incident to his arrest, IMPD officers located three rounds of .38 caliber ammunition in his pocket. A search of the residence where the domestic dispute occurred resulted in the recovery of one round of .38 caliber ammunition from the ground outside the front door. IMPD officers also found two bullet holes in the bed and recovered two bullet fragments from underneath the bed. Firearms experts determined that the bullet fragments were fired by

---

[1] As the investigation progressed, Shelton changed her story. In its Motion in Limine, the Government notes that Shelton asserts that "she retrieved the revolver to protect herself during an argument with the defendant over finances and the defendant's wife. Shelton claimed she and the defendant then struggled over the gun, causing it to discharge . . . . [T]he defendant then took the gun from Shelton, hit her with it, and left the apartment." Mot. in Limine at 2 n.1.

the revolver recovered from the parking lot.

Hunter was charged with two counts of violating 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e). Count One charges that Hunter, a convicted felon, possessed at least one round of .38 caliber ammunition in violation of the statutory provisions. Count Two charges Hunter with possession of a .38 caliber Smith & Wesson revolver, in violation of the same statutory provisions.

## II. DISCUSSION

### A. Motions to dismiss.

Hunter moved to dismiss the Indictment and the Superseding Indictment on the grounds that the Government has impermissibly charged one crime in two counts. However, the Government actually charged Hunter with two separate violations of § 922(g) – possession of ammunition and possession of a firearm. In *United States v. Conley*, 291 F.3d 464, 470 (7th Cir. 2002), the Seventh Circuit stated that "the Government may charge and convict an individual of multiple violations of § 922(g)(1) only if 'it can produce evidence demonstrating that the firearms were stored or acquired separately and at different times or places.'" *Id.* (quoting *United States v. Buchmeier*, 255 F.3d 415, 423 (7th Cir. 2001)). Because firearms and ammunition are interchangeable for purposes of § 922(g), *United States v. Oliver*, 683 F.2d 224, 232 (7th Cir. 1982), the *Conley* rule also applies to the separate possession or acquisition of a firearm and ammunition. Thus, in the instant case, if the Government proves that "Hunter acquired the firearm and ammunition at different times and possessed those items in different locations," Gov't Resp. at 4, then the Government can support two charges and two convictions. *See Conley*, 291 F.3d at 470-71. Accordingly, Hunter's Motions to Dismiss are denied.

**B.	Motion to suppress.**

Hunter seeks to suppress two statements that he made to IMPD officers on the evening he was arrested: (1) his response, "what gun," to an IMPD officer's question about the location of the gun; and (2) his assertion that he "didn't know anything about [the ammunition]" found in his pocket. The Government asserts that both statements are admissible under the public safety exception to *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Supreme Court, in *New York v. Quarles*, 467 U.S. 649, 655 (1984), recognized a "'public safety' exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence." When police are "confronted with the immediate necessity of ascertaining the whereabouts of a gun," the Court feared that providing a defendant with *Miranda* warnings before asking about the gun's location would deter the defendant from responding and would lead to "further danger to the public." *Id.* at 657.

In the instant case, Hunter's statement in response to the officer's question about the gun fits within the public safety exception. During the 911 call, Shelton told the dispatcher that Hunter "shot into my bed" and that he may have taken the gun with him because "its (sic) not here." Gov't Ex. 1 at 2. When IMPD officers caught up with Hunter and determined that he did not have a gun on his person, they had a justified concern for public safety, which permitted them to inquire about the location of the gun. Accordingly, Hunter's statement about the gun is admissible.

Hunter's statement that he "didn't know anything about [the ammunition]" found in his pocket is another story. The Government would like the Court to deem live ammunition a threat to public safety, and conclude that Hunter's second statement is also admissible under the public

safety exception. However, the Government is unable to identify any federal case law extending the public safety exception to *Miranda* to a defendant's statement about ammunition. This stretches the public safety exception too far. Accordingly, Hunter's statement about the ammunition is inadmissible.

> **C.     Motion in limine.**

The Government filed a Motion in Limine seeking to bar Hunter's proposed self-defense instruction, as well as preclude "argument, testimony, and evidence at trial purporting to support [Hunter's] claim of self-defense." (Mot. in Limine at 2). With respect to the jury instruction, as tendered, the instruction is not a correct statement of the law. In felon in possession cases, the Seventh Circuit has held that

> a felon charged with unlawfully possessing a firearm may be entitled to a self-
> defense instruction if he demonstrates: (1) he was under unlawful and present
> threat of death or serious bodily injury; (2) he did not recklessly place himself in a
> situation where he would be forced to engage in criminal conduct; (3) he had no
> reasonable legal alternative (to both the criminal act and the avoidance of the
> threatened harm); and (4) a direct causal relationship between the criminal action
> and the avoidance of the threatened harm.

*United States v. Elder* 16 F.3d 733, 738-39 (7th Cir. 1994) (citation omitted). Hunter's instruction omits the second and fourth elements of the test, and accordingly, is not appropriate. However, if, after the evidence is presented at trial, Hunter believes that a self-defense instruction is warranted, he may tender an appropriate instruction at that time.

As to the portion of the Motion in Limine that seeks to prevent Hunter from presenting evidence, argument, and testimony regarding self-defense, the Government essentially claims that Hunter has not proven each element of the defense and thus, should not be allowed to raise it at trial. "[W]hether . . . an affirmative defense is available to a defendant requires the resolution

of factual issues, and thus, . . . the trial court must accept as true the evidence proffered by the defendants." *United States v. Tokash*, 282 F.3d 926, 967 (7th Cir. 2002) (citing *United States v. Santiago-Godinez*, 12 F.3d 722, 727 (7th Cir. 1993)). "To entitle a defendant to present an affirmative defense to the jury, his proffer must meet the minimum standard as to each element of the defense, so that if a jury finds it to be true, it would support the defense." *Id.*

In the instant case, the gist of Hunter's proffer is:

[W]hen Mr. Hunter and Barbara Shelton were involved in a domestic dispute . . . she obtained a firearm which she wielded in a menacing and threatening manner; Mr. Hunter took the firearm and bullets away from Ms. Shelton and removed them from the premises. Mr. Hunter was stopped by police within minutes after leaving the residence where the dispute occurred.

Def. Mem. in Support of Self-Defense at 1-2. Based on this evidence a reasonable juror could conclude that Hunter acted in self-defense on the night he was arrested. Still, as this is a close call, in order to strike the appropriate balance, the Court shall permit Hunter to present evidence in support of self-defense at trial; however, Hunter may not discuss self-defense in his opening statement. *See United States v. Freeman*, 514 F.2d 1184, 1192 (10th Cir. 1975) (noting that "[t]he scope and extent of the defendant's opening statement rests largely in the discretion of the trial court"). Finally, the Court reiterates that if, after the evidence has been heard, Hunter believes that a self-defense jury instruction is appropriate, he may submit an appropriate instruction at that time.

## **CONCLUSION**

For the foregoing reasons, Hunter's Motions to Dismiss (Docket Nos. 36 & 51) are **DENIED**. Hunter's Motion to Suppress (Docket No. 30) is **GRANTED** as to his statement regarding the ammunition, but is **DENIED** as to his statement regarding the gun. Finally, the

Government's Motion in Limine (Docket No. 55) is **GRANTED** as to any mention of self-defense in the opening statement but **DENIED** as to evidence, argument, and testimony during trial. The Court takes the matter of the jury instruction **UNDER ADVISEMENT.**

SO ORDERED:   12/07/2009

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

William E. Marsh
Indiana Federal Community Defenders
bill.marsh@fd.org

Matthew Rinka
United States Attorney's Office
matthew.rinka@usdoj.gov

Doneaka Rucker-Brooks
Law Office of Doneaka Brooks
doneakabrooks@yahoo.com

U.S. Marshals Service

U.S. Probation Office