**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 1:09-cr-124-WTL-KPF** |
| | ) | |
| **STEVEN L. HUNTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## ENTRY ON DEFENDANT'S MOTION IN LIMINE

## AND GOVERNMENT'S MOTION TO PRE-ADMIT EVIDENCE

The parties are before the Court for resolution of two pre-trial motions: the Defendant's Motion in Limine (Docket No. 72) and the Government's Motion to Pre-Admit Evidence (Docket No. 80). The Court, being duly advised, **TAKES UNDER ADVISEMENT** the Motion in Limine and **GRANTS IN PART AND TAKES UNDER ADVISEMENT IN PART** the Motion to Pre-Admit Evidence.

## I. BACKGROUND

The Defendant, Steven Hunter, is charged with two counts of violating 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e). Count One charges that Hunter, a convicted felon, possessed at least one round of .38 caliber ammunition. Count Two charges Hunter with possession of a .38 caliber Smith & Wesson revolver. At the final pretrial conference, Hunter informed the Government and the Court that he would be presenting the theory of self-defense at trial. He intended to rely on Barbara Shelton's testimony in support of this theory.[1]

---

[1] Shelton is Hunter's girlfriend. Her 911 call precipitated Hunter's arrest on these charges.

During the last week of November 2009, the Government learned that significant portions of Shelton's grand jury testimony were false.  At the same time, the Government became aware of the existence of a large number of recorded telephone calls from Hunter to Shelton, Shelton's sister Diana Owens, and Hunter's sister Tammy Hunter.  In these calls, Hunter coached Shelton on the contents of her recantation affidavit, advised her on what to tell the grand jury, and discussed who could be "recruited" to claim ownership of the gun.  Hunter is also heard attempting to influence witness testimony, attempting to induce perjury, reflecting on the night of his arrest, and seeking unemployment benefits while incarcerated.

In December 2009, the Government filed its notice of intent to introduce these phone calls, as well as other evidence, under Rule 404(b).  The Government also provided several expert witness notices.  Hunter objected and filed a Motion in Limine seeking exclusion of nine pieces of evidence.  One month later, the Government filed a Motion to Pre-Admit Evidence to admitting Shelton's April 8, 2009, 911 call into evidence prior to trial.

## II.  DISCUSSION

Hunter's Motion in Limine seeks exclusion of: (1) evidence that Hunter "possessed quantities of crack cocaine for sale," Motion in Limine ¶ 1; (2) Hunter's statement that he "smacked the shit" out of Shelton;[2] (3) Hunter's statements "encouraging Shelton to give false testimony before a federal grand jury," *id.* ¶ 3; (4) Hunter's efforts to persuade Owens to testify falsely on Hunter's behalf at trial; (5) Hunter's "efforts to enlist others to testify falsely and give false statements on his behalf," *id.* ¶ 5; (6) Hunter's "efforts to get his sister to file

_____

[2] Hunter made this statement in a phone call to his sister that he placed from the Marion County Jail.

unemployment benefits claims on his behalf while he was incarcerated at the Marion County Jail," *id.* ¶ 6; (7) Hunter's "efforts to secure 'under-the-table' post-incarceration employment that would allow him to continue receiving unemployment benefits," *id.* ¶ 7; (8) expert testimony "on a range of topics concerning domestic violence, including the most common victims/aggressors in domestic violence situations, as well as the techniques and challenges," *id.* ¶ 8; and (9) expert testimony "on a range of topics concerning violations of controlled substance and firearms laws," *id.* ¶ 9.  The Court will address Hunter's objections in turn.

### A.   Drug trafficking evidence.

The most hotly-contested evidentiary issue relates to Hunter's uncharged drug trafficking.  The Government asserts that this conduct is admissible under either the inextricably intertwined doctrine or Federal Rule of Evidence 404(b).  While either or both of these theories may ultimately prove viable, at the present time the Court is unwilling to draw a line in the sand and either admit or exclude the evidence of Hunter's drug trafficking.  Accordingly, the Court **TAKES UNDER ADVISEMENT** this objection.  At trial, the Government will request leave of Court prior to introducing any drug trafficking evidence.

### B.   Details of the altercation with Shelton.

Hunter's statement that he "smacked the shit" out of Shelton is relevant and it is not hearsay according to Rule 801(d)(2)(A).  Thus, the statement is admissible.  However, given that neither the Court, nor the parties know precisely how the witnesses will testify at trial, admitting or excluding this statement at this time seems imprudent.  Instead, Hunter's objection is **TAKEN UNDER ADVISEMENT**.  At trial, the Government will request leave of Court prior to introducing this statement.

3

C.      **Statements attempting to influence witnesses.**

Hunter's statements attempting to influence witnesses are admissible as evidence of consciousness of guilt.  *See United States v. Calabrese*, 572 F.3d 362, 368 (7th Cir. 2009) (stating that "we have repeatedly observed that intimidation of a witness suggests consciousness of guilt); *United States v. Marks*, 816 F.2d 1207, 1212 (7th Cir. 1987) (quoting 2 JOHN HENRY WIGMORE, EVIDENCE § 278(2) (James H. Chadbourn ed., 1979)); *see also United States v. Shorter*, 54 F.3d 1248, 1260 (7th Cir. 1995).  Although Hunter claims that these statements are not relevant, the Court disagrees.  As far as Hunter's Rule 403 argument that the statements are unfairly prejudicial, the Court is presently unable to make this determination.  Accordingly, Hunter's objection is **TAKEN UNDER ADVISEMENT** and will be resolved at trial.  The Government shall not introduce these statements without first seeking leave of Court.

D.      **Statements encouraging false testimony.**

The telephone calls encouraging false testimony are considered admissions under Rule 801(d)(2)(A).  *See Shorter*, 54 F.3d at 1260.  Although these statements are relevant, the Court cannot presently determine whether their probative value is substantially outweighed by their potentially prejudicial effect.  Accordingly, Hunter's fourth and fifth objections are **TAKEN UNDER ADVISEMENT**.  The Government will request leave of Court before introducing these statements.

E.      **Statements seeking unemployment benefits or under the table employment.**

Although it appears that Hunter's sixth and seventh objections were resolved when the Government stated that it would not introduce this evidence in its case-in-chief, the Court takes Hunter's objections **UNDER ADVISEMENT**.  If Hunter testifies, or raises his character for

4

truthfulness at trial, thus rendering this evidence admissible, the Government will request leave of Court prior to introducing any of these statements.

### F.     Expert witness testimony.

Hunter's eighth and ninth objections are essentially Rule 403 arguments. The Court understands Hunter's concerns about the expert witnesses' testimony; however, the Court also believes that the expert testimony may ultimately prove useful to the jury. Accordingly, the Court takes these objections **UNDER ADVISEMENT**. At trial, the Government shall request leave of Court before introducing expert testimony regarding domestic violence or the relationship between controlled substances and firearms.

### G.     Motion to Pre-Admit Evidence (Docket No. 80).

The Government's motion seeks pre-admission of Shelton's April 8, 2009, 911 audio recording and the corresponding transcript. The Government asserts that this evidence is admissible under Rules 803(1) and 803(2) and that there is no Sixth Amendment problem because Shelton's statements are non-testimonial. Hunter counters that although the statements in the *initial* 911 call are non-testimonial, when the 911 dispatcher called back, Shelton's statements became testimonial. Thus, Hunter claims that admitting this evidence without guaranteeing him an opportunity to cross-examine Shelton violates the Sixth Amendment.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. AMEND VI. In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the testimonial statements of a witness who does not testify at trial are inadmissible unless the defendant had a prior opportunity to cross-examine the witness.

However, it was not until *Washington v. Davis*, 547 U.S. 813 (2006), that the Supreme Court distinguished "testimonial" evidence from "non-testimonial" evidence. "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822. In contrast, statements are "testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

In *Davis*, the Court emphasized that "a conversation which begins as a non-testimonial interrogation to determine the need for emergency assistance can[] . . . 'evolve into testimonial statements,' once that purpose has been achieved." *Id*. at 828 (quoting *Hammon v. State*, 829 N.E.2d 444, 457 (Ind. 2005)). Thus, in the *Davis* case, the Court emphasized that after the 911 dispatcher "gained the information needed to address the exigency of the moment, the emergency appears to have ended" and the victim's answers to the dispatcher's subsequent questions were testimonial. *Id.* The Court then instructed district courts that "[t]hrough *in limine* procedure[s], they should redact or exclude the portions of any statement that have become testimonial." *Id.* at 829.

Applying these standards to the case at bar, there is no dispute that Shelton's initial 911 call contains only non-testimonial statements. Thus, pre-admission of these statements does not violate the Confrontation Clause. However, when the 911 dispatcher called Shelton back to elicit additional information, Shelton's statements became testimonial. Pre-admission of the statements in the second telephone call would admit testimonial hearsay without guaranteeing

6

Hunter the right to cross-examine Shelton.  This would violate Hunter's Sixth Amendment right to confrontation.  Accordingly, the Government's Motion to Pre-Admit Evidence is **GRANTED** as to the first 911 call.  The Motion is **TAKEN UNDER ADVISEMENT** as to the second 911 call.  If Shelton testifies at trial, thus providing Hunter the opportunity to cross-examine her, then the Government may admit the second 911 call at that time.

## CONCLUSION

For the foregoing reasons, Hunter's Motion in Limine (Docket No. 72) is **TAKEN UNDER ADVISEMENT**.  The Government's Motion to Pre-Admit Evidence (Docket No. 80) is **GRANTED IN PART AND TAKEN UNDER ADVISEMENT IN PART**.

SO ORDERED:   03/16/2010

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

William E. Marsh
Indiana Federal Community Defenders
bill.marsh@fd.org

Matthew  Rinka
United States Attorney's Office
matthew.rinka@usdoj.gov

Doneaka  Rucker-Brooks
Law Office of Doneaka Brooks
doneakabrooks@yahoo.com

U.S. Marshals Service

U.S. Probation Office