UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:09-cr-124-SEB-TAB-01 |
| v. | |
| STEVEN HUNTER | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:09-cr-00124-SEB-TAB |
| ) | |
| STEVEN L. HUNTER, ) -01 | |
| ) | |
| Defendant. ) | |

## ORDER

Defendant Steven Hunter filed a motion requesting a sentence reduction under § 603 of the First Step Act of 2018. Dkt. 193. He seeks immediate release from incarceration. For the reasons explained below, his motion is **denied**.

**I. Background**

In November 2009, a grand jury charged Mr. Hunter with one count of unlawful possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and one count of unlawful possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1) and 924(e). Dkt. 44. According to the presentence investigation report, Mr. Hunter assaulted his girlfriend, fired gunshots into her bed, and left. Dkt. 209-1 at 4. When law enforcement officers arrested Mr. Hunter, he was not in possession of the firearm, but officers quickly located it after retracing the route Mr. Hunter drove. *Id.* at 4-5. When officers conducted a further search of Mr. Hunter, they located four rounds of ammunition in his pocket. *Id.* at 5. A jury found Mr. Hunter guilty of both counts, dkt. 105, and the Court merged the two counts into one, dkt. 112. The Court imposed a sentence of 216 months' imprisonment and three years' supervised release. Dkt. 134. The Bureau

of Prisons ("BOP") lists Mr. Hunter's anticipated release date (with good-conduct time included) as September 12, 2024.

Mr. Hunter is 64 years old and is currently incarcerated at Englewood Federal Correctional Institution. As of November 30, 2021, the BOP reports that 2 inmates and 2 staff members at FCI Englewood have active cases of COVID-19; it also reports that 527 inmates at FCI Englewood have recovered from COVID-19 and that 2 inmates at FCI Englewood have died from the virus. http://www.bop.gov/coronavirus/ (last visited Nov. 30, 2021). The BOP also reports that 768 inmates at FCI Englewood have been fully inoculated against COVID-19. *Id.* That is, approximately 75 percent of the inmates at FCI Englewood have been fully inoculated against COVID-19. *See* https://www.bop.gov/about/statistics/population_statistics.jsp (showing that as of Nov. 30, 2021, the BOP reports that FCI Englewood has a total inmate population of 1,029).

Mr. Hunter initially filed a pro se motion for compassionate release. Dkt. 193. The Court appointed counsel, dkt. 202, and appointed counsel filed a memorandum in support of the motion, dkt. 206. The United States opposed the motion, dkt. 208, and Mr. Hunter replied, dkt. 210. The Court subsequently ordered Mr. Hunter to show cause why the Court should not deny his motion for compassionate release because the risk presented by the COVID-19 pandemic no longer presents an extraordinary and compelling reason for his release. Dkt. 211. Mr. Hunter responded to the Court's order, arguing that despite his full vaccination against COVID-19, his request for compassionate release should still be granted because it is not clear whether the vaccine will provide adequate protection in light of his underlying health conditions. Dkt. 212. He also asserts that his need to care for his disabled wife presents an extraordinary and compelling reason justifying compassionate release. *Id.* The motion is now ripe for decision.

## II. Legal Standard

The general rule is that sentences imposed in federal criminal cases are final and may not be modified.  18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act was enacted on December 21, 2018, only the Director of the BOP could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the

5

reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F. 3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Sentencing Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

**III. Discussion**

Mr. Hunter presents two bases for concluding that extraordinary and compelling reasons exist to justify reducing his sentence: (1) his underlying medical conditions, which make him more susceptible to severe complications from COVID-19, combine with the BOP's inability to control COVID-19 outbreaks to present a serious risk to his health; and (2) his need to care for his disabled wife. As explained below, Mr. Hunter has not presented an extraordinary and compelling reason warranting relief under § 3582(c)(1)(A), and the sentencing factors in § 3553(a) do not favor relief. Thus, his motion must be denied.

*A. Extraordinary and Compelling Reasons*

1. Medical Conditions

Mr. Hunter's first argument is that his medical conditions combined with the threat of the COVID-19 pandemic constitute an extraordinary and compelling reason to warrant a sentence reduction. As explained below, such a situation is not sufficient to justify a sentence reduction due to the availability of a vaccine.

Mr. Hunter argues that his obesity, high cholesterol, allergies, sleep apnea, hypertension, age, and high blood sugar are all medical conditions that increase his risk of getting severely ill from COVID-19. *See* dkt. 193 at 3 and dkt. 206 at 11-13; s*ee also* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 30, 2021). Even assuming that Mr. Hunter suffers from a health condition that makes it more likely that he will get severely ill from COVID-19, he has not established an extraordinary and compelling reason to grant his request for a sentence reduction. Earlier in the pandemic, the Court found on several occasions that a defendant had established extraordinary and compelling reasons warranting release when the defendant suffered from

7

conditions that the CDC recognized as increasing the risk of severe COVID-19 symptoms. *See*, *e.g.*, *United States v. Johnson*, No. 1:99-cr-59-JMS-DML-06, dkt. 317 (S.D. Ind. Mar. 11, 2021). Underlying those holdings was the understanding that the virus was difficult to control in a prison setting, in part because no vaccine had yet been made widely available.

The situation has now changed dramatically. Three vaccines are being widely distributed in the United States, and Mr. Hunter has received both doses of the Moderna vaccine. Dkt. 212-1. Although no vaccine is perfect, the CDC has recognized that COVID-19 vaccination prevented most people from getting COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Nov. 30, 2021). The CDC also reports that the COVID-19 vaccines authorized for use in the United States offer protection against most variants currently spreading in the United States. *Id.*

Recently, the Seventh Circuit held that COVID-19 could not be an extraordinary and compelling reason for release for an inmate who had declined the vaccine without an adequate medical justification. *See United States v. Broadfield*, 5 F.4th 801 (7th Cir. 2021). In so holding, the court reasoned, "[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer far more relief than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine may still turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *Id.* at 803. Moreover, the court concluded that "[t]he federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccination safe and effective." *Id.* The Seventh Circuit reinforced its position on this issue in a subsequent case,

8

*United States v. Burgard*, 857 F. App'x 254, 254 (7th Cir. 2021), in which it concluded that a prisoner with asthma had not established extraordinary and compelling reasons warranting compassionate release based on risk from COVID-19 because "the widespread availability of the COVID-19 vaccine within the Federal Bureau of Prisons likely eliminate[d]" release on such a basis. As in *Broadfield*, nothing in the record indicated that Mr. Burgard was unable, medically or otherwise, to receive the vaccine; moreover, approximately 80% of the inmate population at his prison had been vaccinated. *Id.* Consequently, he was not entitled to release. *Id.*

Here, Mr. Hunter has been fully vaccinated against COVID-19, almost 75 percent of the inmate population at FCI Englewood is fully vaccinated, and there are only 4 inmates or staff with a current COVID-19 infection at his facility. Given these facts and the rationales of *Broadfield* and *Burgard*, the court declines to exercise its discretion to find that the risk Mr. Hunter faces from the COVID-19 pandemic constitutes an extraordinary and compelling reason warranting release under § 3582(c)(1)(A). *See United States v. Gaskins*, No. 1:16-cr-249-JMS-MJD-3, dkt. 274 (S.D. Ind. Feb. 16, 2021) (finding no extraordinary and compelling reason based on COVID-19 risk where defendant had been fully vaccinated); *United States v. Schoonover*, No. 1:02-cr-156-JMS-TAB-01, 2021 WL 1814990, at *4 (S.D. Ind. May 6, 2021) (same); *see also United States v. Harris*, No. 4:16-cr-40073-SLD, 2021 WL 2021440, at *3 (C.D. Ill. May 20, 2021) ("In light of his vaccination and the low number of cases at USP Lompoc currently, the Court finds that Defendant has not shown extraordinary and compelling reasons for release exist based on the COVID-19 pandemic.").

Mr. Hunter speculates that due to his medical conditions, the vaccine may not provide full protection. *See* dkt. 212 at 1-4. The CDC acknowledges that people who are moderately to severely immunocompromised may not develop an adequate immune response to the standard two-dose

9

sequence of mRNA vaccines. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/immuno.html (last visited Nov. 30, 2021). Such people make up about 3% of the population of the United States. *Id.* Mr. Hunter has not submitted any evidence to suggest that he is among the small number of immunocompromised people who may not have an adequate immune response to the COVID-19 vaccine. For example, he has not pointed the Court to any evidence suggesting that he is currently taking immunosuppressant medications. While the COVID-19 vaccine may not offer Mr. Hunter perfect protection, the risk that he will become severely ill or die from the virus has been substantially diminished. Even after Delta became the most common variant of COVID-19, the CDC reports that fully vaccinated people's risk of being hospitalized or dying from the virus was reduced by 10 times as compared to unvaccinated people. *See* https://www.cdc.gov/mmwr/volumes/70/wr/mm7037e1.htm (last visited Nov. 30, 2021). This risk reduction means that the risk from COVID-19 is not an extraordinary and compelling reason warranting relief for Mr. Hunter, whether alone or in combination with his other proffered reason for relief.

### 2. Need to Care for Wife

Mr. Hunter's next argument falls under subsection (C) of Application Note 1 to § 1B1.13—Mr. Hunter contends that an extraordinary and compelling reason to justify a sentence reduction exists because he needs to provide care for his disabled wife. Dkt. 193 at 4; dkt. 206 at 6-7. While the Court commends Mr. Hunter's desire to care for his wife, he has not presented any evidence that she is incapacitated as required by subsection (C). The records submitted by Mr. Hunter demonstrate that his wife has medical conditions and qualifies as "disabled" for purposes of the Social Security Administration, *see* dkt. 193-4, but there is nothing to establish that she is unable to care for herself. In fact, Mr. Hunter states that his wife currently lives alone. *Id.* at 5; *see also*

dkt. 206-2 at 1 (letter from Mr. Hunter's wife stating she would like her husband "to come home to help" her). Mr. Hunter has not established that his wife's health has deteriorated to the level of incapacitation, and thus he has not established an extraordinary and compelling reason to justify a sentence reduction on this basis.[1]

   *B. Section 3553(a) Factors*

Even if Mr. Hunter had shown extraordinary and compelling reasons warranting release, the Court would deny his motion because the § 3553(a) factors do not favor release. Those factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). The Court will address the factors that are applicable to Mr. Hunter's motion.

---

[1] The Court recognizes that it is not bound by the literal language of subsection (C) of Application Note 1 to § 1B1.13 and that it is free to exercise its discretion to find extraordinary and compelling reasons warranting relief even if none of the provisions of § 1B1.13 apply. *See Gunn*, 980 F.3d at 1180. Nonetheless, the Court declines to do so because Mr. Hunter has not submitted any evidence establishing that his wife is, in fact, incapacitated. Many inmates have spouses who could benefit from assistance from their incarcerated spouses. On the record as it currently stands, Mr. Hunter has not shown that his wife's situation is extraordinary.

Weighing in Mr. Hunter's favor are the following facts: (1) his completion of the Drug Education course and the Non-Residential Drug Abuse Program; (2) his completion of his financial obligations; and (3) his commendable employment record and reviews. The Court also recognizes that Mr. Hunter may face some risk from the COVID-19 pandemic.

But, other factors weigh heavily against Mr. Hunter. First, his crime was serious. Not only did he exhibit aggressive, violent behavior towards the victim, he also then engaged in extensive efforts to persuade or coerce her to recant her prior statements to law enforcement officers. Dkt. 209-1 at ¶¶ 7-18. Additionally, Mr. Hunter has a significant criminal history that includes convictions for theft, robbery, and confinement. *Id.* at ¶¶ 36-41. He still has almost three years left to serve on his sentence, so reducing his sentence to time served would amount to a substantial reduction. Finally, although it appears that Mr. Hunter has received only one disciplinary write-up while incarcerated, that write-up occurred in 2019 and was for assault without serious injury. Dkt. 206-3 at 2.

As a result, reducing Mr. Hunter's sentence to time served would not: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; or protect the public from further crimes of the defendant. *See United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) ("[A]ll a district judge need do is provide a sufficient reason for [denying relief under § 3582(c)(1)]. One good reason for denying a motion such as Ugbah's is enough; more would be otiose.").

## IV. Conclusion

For the reasons stated above, Mr. Hunter's motion to reduce sentence, dkt. [193], is **denied**.

**IT IS SO ORDERED.**

Date: 12/6/2021

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel